**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒
**CAPGEMINI U.S. LLC (f/k/a/ CAPGEMINI**
**ERNST & YOUNG U.S. LLC),**

                    Petitioner,

        - against ‒

**NIELS SORENSEN,**

                    Respondent.
‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒


**04 Civ. 7584 (JGK)**

**OPINION & ORDER**


JOHN G. KOELTL, District Judge:

    The petitioner Capgemini U.S. LLC ("Capgemini"), a limited
liability company incorporated in Delaware with its principal
place of business in New York, has filed a petition to vacate,
modify, or correct an award (the "award") entered by a panel (the
"Panel") of the American Arbitration Association ("AAA") in favor
of the respondent, Niels Sorensen ("Sorensen"), a citizen of
Denmark.  (See In the Matter of the Arbitration between Niels
Sorensen and Cap Gemini Ernst & Young U.S., LLC, Award of
Arbitrator dated July 25, 2004 ("Arbitration Award"), attached at

Exhibit 9 to Declaration of Christoph C. Heisenberg in Support of Petition to Vacate, Modify, or Correct Arbitration Award, dated Sept. 22, 2004 ("Heisenberg Decl.").) Sorensen opposes the petition and has cross-petitioned to modify the Award or, in the alternative, to confirm the Award. The petition and cross-petition have been brought pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10 and 11  Jurisdiction is based on diversity of citizenship.[1]  28 U.S.C. § 1332(a)(2).

I.

The following facts are undisputed unless otherwise noted.

The arbitration that is the subject of this motion arose out of the discharge of Sorensen from his employment with Capgemini in January 2002.  (Demand for Arbitration, attached at Ex. 4 to Heisenberg Decl.)  Upon hiring Sorensen, Capgemini had granted him 18,000 shares of its stock.  (Transcript dated Mar. 31, 2004 at 1326, attached at Ex. B to Declaration of Michael E. Peterella in Opposition to Capgemini's Petition to Vacate, Modify, or Correct Arbitration Award, dated Oct. 25, 2004 ("Petrella Decl.").)  All shares immediately vested.  (Transcript of June 10, 2005 Proceedings at 8.)  At the time of his discharge, 10,201

---

[1] There is complete diversity of citizenship under 28 U.S.C. § 1332(a)(2). The respondent is a citizen of a foreign state and Capgemini has advised the Court that no member of Capgemini is a citizen of a foreign state.

of these shares (the "shares") remained held in escrow by

Capgemini.  Although these shares had vested, they were subject

to a forfeiture schedule that restricted Sorensen's ability to

sell his shares to fixed percentages at fixed time periods.

(Heisenberg Decl., Ex. 1 at Ex. D, p. 19.)  The shares were also

subject to forfeiture under several conditions specified in the

Consulting Partner Transaction Agreement (the "Agreement") that

Sorensen signed upon accepting employment with Capgemini.

(Consulting Partner Transaction Agreement at 9, attached at Ex. 1

to Heisenberg Decl.)  The Agreement provided that Sorensen would

forfeit a percentage of his Capgemini stock in the event he

voluntarily left Capgemini or in the event that he was terminated

for poor performance.  (Id.)  When Capgemini terminated Sorensen

in January 2002, Capgemini refused to transfer the 10,201 shares

to Sorensen, arguing that, because it was discharging him for

poor performance, he had forfeited his shares.  Because

Sorensen's employment agreement required him to arbitrate any

employment disputes with the AAA pursuant to AAA's Commerical

Dispute Resolution Rules (the "AAA Rules"), Sorensen filed a

Statement of Claim (the "Statement of Claim") with the AAA on

July 23, 2002, seeking damages and related relief.  (Agreement

for Ernst & Young Consulting Partners Who Join Cap Gemini, Ernst

& Young U.S. LLC ("Arbitration Agreement"), attached to

Supplemental Declaration of Christoph C. Heisenberg dated June 9,

2005; Statement of Claim, dated July 23, 2002 ("Statement of

Claim"), attached at Ex. 4 to Heisenberg Decl.)  The Statement of

Claim sought damages in the form of his bonus for the year 2001,

losses that Sorensen alleged resulted from Capgemini's failure to

sell his shares according to his instructions, "the balance of

[Sorensen's Capgemini] stock (10,206 shares) [sic]", and other

damages.  (Statement of Claim at 7-8.)

The hearings took places from December 2003 through April

2004.  During the course of his opening statement on the first

day of the hearing, Sorensen's counsel stated, "Cap Gemini Ernst

& Young confiscated stock worth approximately 1.164 million,

that's the 10,201 shares."  (Transcript dated Dec. 15, 2003 at

13, attached at Ex. B. to Petrella Decl.)  During closing

arguments, Sorensen's counsel discussed the monetary value of the

10,201 shares of stock, submitting alternative theories for the

measurement of monetary damages resulting from the seizure of the

shares.  (See Transcript dated Apr. 23, 2004 ("4/23/04 Tr.") at

2179-2180, attached at Ex. B to Petrella Decl.)  Later, in

response to a question from the Panel as to whether either party

had additional evidence or witnesses, the following exchange

occurred:

> "[Counsel for Sorensen]: I'm told there's an e-mail from
> Mr. Gordon that gives a price of a stock that we may need
> to do this calculation that we're going to give you.  Is it
> an email?

> "[Co-counsel for Sorenson]: It just lists objective numbers
> for values.

> "[Counsel for Sorensen]: That's the only thing I can think
> of.  It's an email from Mr. Gordon with some stock prices
> on it.

> "[Panel member]: Mr. Chairman, is that okay?

> "[Counsel for Capgemini]: I don't know what they're talking
> about, I guess, is my response."

> See 4/23/04 Tr. at 2194-95.

After a discussion regarding the email, the following

exchange occurred:

> "[Counsel for Sorensen]: Not only that, it's not going to
> be used for purposes of some sort of – to contest
> credibility or anything like that.  It's being used to
> convey, just figures, objective figures that were sent from
> the other side to us.

> "[Counsel for Capgemini]: It sounds as if he's trying to
> found a whole damage theory on it, and I haven't had the
> opportunity to see it, cross-examine Mr. Sorensen on it, or
> what not, so….

> "The Chairman: The panel is not inclined to grant that.

> "[Co-counsel for Sorensen]: Okay."

> 4/23/04 Tr. at 2196-97

The parties did not offer additional evidence or call additional witnesses, and the proceeding ended shortly thereafter. Id. at 2197.

On May 25, 2004, the parties submitted their "post-hearing" memoranda. AAA Rules R-34 and R-37 authorize the Panel to receive and accept documents and other evidence after the hearing, and provide that a hearing is not deemed closed until the receipt of those documents. (Heisenberg Decl., Ex. 3.) In his brief, Sorensen argued that he was entitled to "an award of damages that fairly compensates him for the 10,201 shares… wrongfully revoked…." (Post-Hearing Brief for Claimant Niels Sorensen at 58, attached at Ex. K to Petrella Decl.) In its post-hearing memorandum, Capgemini argued that Sorensen had improperly requested damages in the form of the monetary value of the 10,201 shares. (Capgemini's Post-Hearing Memorandum at 61-64, attached at Ex. 7 to Heisenberg Decl.) Capgemini argued that the request for monetary damages was improper because Sorensen had failed to request that specific remedy earlier and that, consequently, the Panel had no proof as to the value of the shares. (Id.) Capgemini also argued that the allegedly untimely request prejudiced Capgemini because Capgemini had introduced no evidence on the subject. (Id. at 63.) Capgemini did not

introduce any evidence on the value of the stock in its post-hearing memorandum.  (<u>Id.</u> at 61-64.)

On June 8, 2004, Capgemini moved to strike Sorensen's request for a remedy in the form of the monetary value of the 10,201 shares of stock, and to strike the damage calculation that Sorensen proposed in his post-hearing memorandum.  (Heisenberg Decl., Ex. 8, at 1-2.)  The motion argued that Capgemini would be prejudiced by the damages request because Sorensen had never sought monetary damages in his Statement of Claim or presented evidence on monetary damages during the hearing.  (<u>Id.</u>)

On July 25, 2004, the Panel issued the Award finding that Capgemini breached its contract with Sorensen by terminating Sorensen's employment for alleged poor performance and asserting a forfeiture of the 10,201 shares.  (Arbitration Award at 1.) The Panel awarded damages of $687,955 for this breach.  (<u>Id.</u>) The Award was based on a share price of $67.44 per share, which was the share price for the last sale of Sorensen's Capgemini stock in August 2001.  (<u>Id.</u>)  The Panel also awarded prejudgment interest of $163,248 calculated at 9% from January 1, 2002, to August 21, 2004, on the award of $687,955.  (<u>Id.</u>)

On August 4, 2004, Capgemini moved to modify the Award. (Petrella Decl., Ex. F.)  Capgemini argued that the award of

$687,955 miscalculated the value of the 10,201 shares because it did not take into account the restrictions to which the stock was subject.  (Id.)  Capgemini also argued that it was improper to calculate the interest on the Award from January 1, 2002, because, due to the restrictions on the shares of stock, Sorensen was not entitled to sell a portion of the shares until later periods.  (Id.)  On August 24, 2004, the Panel denied the motion. (See Petrella Decl., Ex. G.)


## II.

The task for a party seeking to vacate an arbitration award is a formidable one. The party challenging an arbitration award generally bears a heavy burden of proof, and limited review of arbitration decisions is necessary both to effectuate the parties' agreement to submit their disputes to arbitration and to avoid costly and protracted litigation about issues the arbitrators have already decided. See, e.g., DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 821 (2d Cir. 1997); Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp., 103 F.3d 9, 12 (2d Cir. 1997); In re Arbitration Between Space Sys./Loral, Inc. and Yuzhnoye Design Office, 164 F.Supp.2d 397, 403 (S.D.N.Y

2001); see also, Wedbush Morgan Securities, Inc. v. Robert W. Baird & Co., 320 F.Supp.2d 123, 126 (S.D.N.Y. 2004).

A federal court may vacate an arbitration award only on specified grounds: either those contained in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, or under the severely limited doctrine of manifest disregard of the law. See Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004); Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388-89 (2d Cir. 2003); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986) (explaining judicially created doctrine of manifest disregard of the law).  The petitioner argues that the Award should be vacated because it violated 9 U.S.C. § 10(a)(3) and (4) and because the Panel manifestly disregarded the law in reaching its decision.

An arbitration award may be vacated pursuant to § 10(a)(3) "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."  9 U.S.C. § 10(a)(3).  Courts have interpreted § 10(a)(3) to mean that, "except where fundamental fairness is violated, arbitration determinations will not be opened up to

evidentiary review." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997).  In making evidentiary decisions, "an arbitrator must give each of the parties to the dispute an adequate opportunity to present its evidence and argument," but, in doing so, the arbitrator is not required to hear all the evidence proffered by a party or to "follow all the niceties observed by the federal courts."  Id. at 20 (internal quotation marks and citations omitted).

An arbitration award may be vacated pursuant to § 10(a)(4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4). The Court of Appeals for the Second Circuit has "consistently accorded the narrowest of readings" to the FAA's authorization to vacate awards pursuant to § 10(a)(4). Banco de Seguros del Estados v. Mutual Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003); Westerbeke Corp v. Daijatsu Motor Co., Ltd., 304 F.3d 200, 220 (2d Cir. 2002) (citation omitted).  The court's inquiry under § 10(a)(4) "focuses on whether the arbitrators had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." Westerbeke, 304 F.3d at 220 (quoting

DiRussa, 121 F.3d at 824).  The Court must determine "whether the arbitrator[s] acted within the scope of [their] authority," or whether the arbitral award is merely the "arbitrator[s'] own brand of justice." Banco de Seguros del Estados, 344 F.3d at 262 (citing Local 1199 v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir. 1992)).

In addition to its power under 9 U.S.C. § 10, a federal court may also vacate an arbitration award that was issued in manifest disregard of the law.  The Court of Appeals for the Second Circuit has repeatedly emphasized that review of an arbitration award for manifest disregard of the law is "severely limited," and "to modify or vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 202 (2d Cir. 1998) (internal quotations omitted); see also Duferco, 333 F.3d at 388-89; DiRussa, 121 F.3d at 821; Wedbush, 320 F.Supp.2d at 126-27. Review under the doctrine of manifest disregard of the law is not an inquiry into the correctness of the decision, and the "erroneous application of rules of law is not a ground for

vacating an arbitrator's award, nor is the fact that an arbitrator erroneously decided the facts." <u>Siegel v. Titan Indus. Corp.</u>, 779 F.2d 891, 892-93 (2d Cir. 1985) (citations omitted); <u>see</u> <u>Bobker</u>, 808 F.2d at 933-34 (explaining that court is "not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it"); <u>see</u> <u>also</u>, <u>Wedbush</u>, 320 F.Supp.2d at 127. Instead, the error must be "plainly evident from the arbitration record," <u>Duferco</u>, 333 F.3d at 388, such that it is "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." <u>Bobker</u>, F.2d at 933; <u>see</u> <u>also</u> <u>Wedbush</u>, 320 F.Supp.2d at 127.

Vacating an award for manifest disregard is appropriate only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." <u>Duferco</u>, 333 F.3d at 389.

III.

A.

Capgemini argues that the Award should be vacated or modified pursuant to § 10(a)(3) and § 10(a)(4) because the Panel failed to provide Capgemini with notice or an ability to be heard on the issue of monetary damages. Capgemini argues that Sorensen failed to provide notice that he was seeking the remedy of the monetary value of the stock, and that the Panel failed to indicate that it was considering such a remedy. Capgamini argues that Sorensen's Statement of Claim indicated that Sorensen was seeking only the return of the stock, because the first page of Sorensen's Statement of Claim lists "$6,675,000 + stock" under "claim or relief sought." (Statement of Claim at 1.) Capgemini also argues that, even if Sorensen's opening statement passage mentioning the value of the 10,201 shares hinted that he was seeking this remedy, Sorensen failed to follow-up adequately on this statement by seeking to amend his Statement of Claim. Moreover, Capgemini argues that Sorensen failed to provide any evidence in support of a monetary remedy during the eight days on which oral hearings were held. Capgemini argues that it had no notice that Sorensen was seeking this remedy until Sorensen's closing argument, when Sorensen's attorney attempted to introduce an email providing evidence of the proper value of the stock. (4/23/04 Tr. at 2194-97.) Capgemini argues that the Panel's

response that it was "not inclined to grant that," indicated that such a remedy could not be pursued at that point, and thus failed to put Capgemini on notice that the Panel was considering such a remedy.  (<u>Id.</u> at 2197.)

Capgemini argues that, because it did not have notice, it was deprived of an opportunity to submit witnesses and evidence as to the remedy.  Capgemini argues that it was again refused the opportunity to be heard by the Panel's denial of its post-hearing motion to strike Sorensen's request for monetary damages. Capgemini argues that this lack of opportunity to be heard deprived it of a fundamentally fair hearing, and that the Court should therefore vacate or modify the Award pursuant to §10(a)(3).  <u>See</u>, <u>e.g.</u>, <u>Tempo Shain</u>, 120 F.3d at 20 (vacating arbitration award where there was no reasonable basis for arbitration panel's decision to refuse to hear testimony of witness); <u>Kaplan v. Alfred Dunhill of London, Inc.</u>, No. 96 Civ. 0258, 1996 WL 640901, at *5-6 (S.D.N.Y. Nov. 4, 1996) (vacating award for fundamental unfairness where party had not received notice of arbitration and was therefore unable to present any evidence, and where panel refused to reopen the arbitration after party informed panel of failure of notice).

Sorensen's counsel referred to his claim for damages in his opening statement. At closing argument, Sorensen's attorney again raised and discussed the issue of monetary damages and the proper measurement of such damages, and stated his intention "to document this in the trial brief." (4/23/04 Tr. at 2179.) After outlining Sorensen's proposed measurement of monetary damages for the 10,201 shares, Sorensen's attorney stated that, "[w]e will provide detail and backup for both alternative measures of damages and as well as attorneys' fees and costs, cost shifting that we've talked about in this case, and prejudgment interest." (Id. at 2181.) This clearly provided Capgemini with adequate notice as to the issue of monetary damages, as well as an opportunity to be heard. Capgemini, however, chose not to offer an alternative argument for the measurement of damages.

Capgemini argues that the exchange between the Panel, Capgemini's attorneys, and Sorensen's attorneys after Sorensen's closing argument established that Capgemini objected to the issue of monetary damages being raised, and that the Panel indicated that it would not consider such an argument, depriving Capgemini of notice that monetary damages were at issue. However, the thrust of the objection was not the issue of monetary damages but the introduction into evidence of an email from Capgemini to

Sorensen that would allegedly provide evidence of the monetary value of the stock. (Id. at 2194-97.) Sorensen's attorney, arguing for the admission of the email, stated, "it's not going to be used… to contest credibility…. It's being used to convey, just figures, objective figures that were sent from the other side to us." (Id. at 2196-97.) Capgemini responded by stating, "[I]t sounds as if he's trying to found a whole damage theory on it, and I haven't had the opportunity to see it, cross-examine Mr. Sorensen on it…." It is clear from the transcript that the "it" to which the attorneys are referring is the email, and thus that Capgemini is objecting to the introduction of the email, and not to the "damage theory" that it would allegedly support. The Panel then stated that it was not inclined to allow the introduction of the email, Sorensen's attorney stated that he had no additional evidence to present, and the hearing concluded. (Id. at 2197.) At no point did the Panel state that it would not consider monetary damages. Capgemini, on notice that monetary damages were sought, chose not to present any evidence on the value of the 10,201 shares of stock.

Capgemini had additional opportunities to be heard on the issue of monetary damages after the hearing. On May 25, 2004, Capgemini filed its post-hearing memorandum. Although such

memoranda are referred to as being "post-hearing," the AAA Rules make clear that, after the oral hearing, parties may submit additional documents and that the hearing is not closed until all such documents have been submitted. (AAA Rules, R-34, R-37, attached at Ex. 3 to Heisenberg Decl.) Indeed, the Panel did not close the hearing until June 21, 2004. (Letter from Aileen Rocheleau, Supervisor for American Arbitration Association, dated June 28, 2004, attached at Ex. E to Petrella Decl.) On notice that monetary damages were sought and would be addressed in Sorensen's post-hearing memorandum, Capgemini's post-hearing memorandum argued that the Panel should not consider Sorensen's request for monetary damages because it had been argued too late, and because it was unsupported by the evidence. (Capgemini's Post-Hearing Memorandum at 61-64, attached at Ex. 7 to Heisenberg Decl.) Capgemini did not offer any evidence of its own as to the value of the stock. (Id.) On June 8, 2004, Capgemini moved to strike portions of Sorensen's post-hearing memorandum that addressed damage remedies. (Heisenberg Decl., Ex. 8.) Again, Capgemini did not submit any evidence on the value of the 10,201 shares. (Id.) Capgemini did not submit any additional documents pursuant to Rule R-34 before the close of the hearing.

Because Capgemini had adequate notice that monetary damages were sought and an opportunity to be heard before the close of the hearing, it cannot now argue that its failure to take advantage of those opportunities requires that this Court vacate the Award pursuant to § 10(a)(3).  See <u>Yonir Techs. v. Duration Sys. Ltd.</u>, 244 F.Supp.2d 195, 209 (S.D.N.Y. 2002) (refusing to vacate award pursuant to 9 U.S.C. § 10(a)(3) where petitioner had adequate opportunity to be heard through written submissions to panel); <u>Asturiana de Zinc Marketing, Inc. v. LaSalle Rolling Mills, Inc.</u>, 20 F.Supp.2d 670, 672-73 (S.D.N.Y. 1998) (finding panel's acceptance of new calculations for damages after hearing when petitioner lacked opportunity to cross-examine or present new evidence did not require vacatur pursuant to 9 U.S.C. § 10(a)(3)); <u>In the Matter of Arbitration Between Carina Int'l Shipping Corp. and Adam Maritime Corp.</u>, 961 F.Supp. 559, 567 (S.D.N.Y. 1997) (refusing to vacate award pursuant to 9 U.S.C. § 10(a)(3) for hearing in which panel had considered what petitioner argued was new claim after close of hearing because petitioner had failed to request additional discovery or reopening of hearing).

Capgemini made the tactical decision to limit its post-hearing submissions to the argument that Sorensen's request for

monetary damages was untimely and not supported by the evidence, a claim that the Panel ultimately rejected.  Capgemini was free to argue, in the alternative, for what it believed was the proper value of the 10,201 shares, and to submit supporting evidence. Having chosen not to make those alternative arguments, it cannot now argue that it was denied notice and opportunity to be heard. See <u>Carina Int'l Shipping</u>, 961 F.Supp. at 567.

Capgemini also failed to take advantage of a potential opportunity to be heard when it failed to request that the hearing be re-opened.  AAA Rule R-38 allows the hearing to be re-opened at any time before the award is made upon application of a party.  (AAA Rules, R-38, attached at Ex. 3 to Heisenberg Decl.) Even after the Panel closed the arbitration on June 21, 2004, Capgemini could have applied to re-open the hearing to hear additional evidence on the issue of monetary damages before the Award was made over one month later on July 25, 2004.  Instead, Capgemini chose to rely solely on its arguments in its post-hearing submissions, which the Panel subsequently rejected in the Award.  Capgemini cannot now argue that it was denied a fundamentally fair hearing when it did not avail itself of the opportunity to be heard.  See <u>Carina Int'l Shipping</u>, 961 F.Supp. at 567 (finding that party, "by its own tactical choice… waived

the right to argue that the awarding panel committed misconduct under 9 U.S.C. § 10(a)(3) by not re-opening the evidentiary hearings").

B.

Capgemini argues that the Panel's subsequent consideration of Sorensen's request for monetary remedies exceeded their powers and that therefore the Court should vacate or modify the arbitration award pursuant to § 10(a)(4). Capgemini argues that, because Sorensen's Statement of Claim sought the return of the 10,201 stock and not its monetary value, the Panel essentially allowed Sorensen to modify his claim after the hearings by allowing him to seek the monetary value of the 10,201 shares of stock in his post-hearing memorandum. Capgemini argues that this violated the AAA Rules governing the arbitration by allowing Sorensen to change his claim after the close of the hearing. (AAA Rules, R-6, attached at Ex. 3 to Heisenberg Decl.) Capgemini argues that, because the arbitration agreement stated that the Panel would be bound by the AAA Rules, the Panel exceeded its powers by choosing to ignore the AAA Rules guiding the amendment of claims. Capgemini also argues that the Panel exceeded its authority by awarding damages and providing a

- 20 -

measure of monetary damages, because the issue was not before the Panel.  See, e.g., Totem Marine Tug & Barge, Inc. v. North Am. Towing, Inc., 607 F.2d 649, 651 (5th Cir. 1979) (vacating arbitration award where arbitration panel awarded unrequested damages about three times larger than any item claimed). Therefore, Capgemini argues, the Court should vacate the arbitration award pursuant to § 10(a)(4).

Capgemini has not demonstrated that the Panel exceeded its powers such that the Court should vacate the Award pursuant to § 10(a)(4).  The Arbitration Act was intended to give arbitrators wide latitude in resolving contractual disputes.  See South East Atlantic Shipping Ltd. v. Garnac Grain Co., 356 F.2d 189, 192 (2d Cir. 1966).  Sorensen's employment agreement provided that the Panel would follow the AAA Rules.  (Arbitration Agreement.) Capgemini has shown no specific AAA rule that the Panel violated by finding an award of monetary damages.  On the contrary, the AAA Rules provide that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract."  (AAA Rules, R-45, attached at Ex. 3 to Heisenberg Decl.)  In this case, Sorensen's claim to the 10,201 shares was plainly at issue in the

arbitration and the award did no more than provide a remedy for those allegedly wrongfully withheld shares.

Capgemini's reliance on Totem Marine Tug & Barge, Inc. v. North Am. Towing, Inc. is misplaced. In Totem, the parties, Totem and North American, entered into a charter agreement for a vessel owned by Totem, which Totem terminated before the agreement expired. Totem, 607 F.2d at 650. North American requested arbitration, and provided an itemized statement of the losses for which it sought damages. Id. The itemized statement did not contain a request for damages for charter hire, and North American conceded that charter hire was "not an issue in the arbitration." Id. at 650-51. Nonetheless, the arbitration panel provided damages for charter hire that totaled three times the amount of any item on the itemized list that North American had provided. Id. The Court found that the arbitration panel had exceeded its powers under §10(a)(4) (formerly 9 U.S.C. § 10(d)). Id.

Here, unlike in Totem, the Panel did not decide a separate theory of liability that was not at issue in the arbitration. Although Capgemini disputes the form that the damages for the 10,201 shares took, it does not dispute that liability for the shares was a central issue in the arbitration and was fully

litigated.  Therefore, <u>Totem</u> does not provide support for the argument that the Court should for vacate the Award based pursuant to § 10(a)(4).

C.

Capgemini argues that the Court should vacate or modify the Award because the Panel exceeded its powers by ignoring the forfeiture schedule of the 10,201 when valuing the shares. The Employment Agreement by which the Panel was bound states that "[t]he arbitrators have no power… to alter, amend, or otherwise affect the terms of the employment Agreement."  (Arbitration Agreement, Annex 4.)  Capgemini argues that, by ignoring the restrictions on the shares, the Panel altered the Employment Agreement and therefore exceeded the scope of their authority.

The Court may only vacate or modify the Award pursuant to § 10(a)(4) if the Panel did not have the power to reach a certain issue.  <u>See</u> <u>DiRussa</u>, 121 F.3d at 824.  The inquiry under § 10(a)(4) focuses on whether "the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided the issue."  <u>Id.</u>

As explained above, it is clear that the issue of the 10,201 shares and the value of the stock was properly before the Panel in deciding liability and appropriate damages. The Panel therefore had the power to calculate damages based upon the value of the stock. In doing so, the Court was bound by AAA Rule R-45, which gave the Panel the power to fashion "any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." (AAA Rule R-45, attached at Ex. 3 to Heisenberg Decl.) Capgemini has put forth no evidence indicating that the Panel did not deem the remedy just, equitable, or within the scope of the agreement. Capgemini only argues that the Panel mistakenly failed to account for the restrictions on the stock when calculating its value. But, the Panel valued the stock based upon the best evidence in the record – the sale price of the last sale of Sorensen's stock some months before the date of the breach. There is no evidence that Capgemini presented any evidence of any appropriate reduction in the value of the stock based on any restrictions on its sale. In any event, the issue under § 10(a)(4) is whether the arbitrators had the power to grant damages for the wrongful withholding of the stock, and they did.

D.

1.

Capgemini argues that the Award should be vacated or modify for manifest disregard of the law. It is undisputed that New York law, which the parties agree applies,[2] calculates damages for the withholding of stock in breach of a contract based on the price of the stock on the date of the breach. See Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 196-97 (2d Cir. 2003); Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 262 (2d Cir. 2002); Scully v. U.S. WATS, Inc., 238 F.3d 497, 512 (2d Cir. 2001). Capgemini argues that, while New York contract law requires that monetary damages be measured from the date of the breach, here January 11, 2002, the Panel improperly calculated the value of the stock using the date of Sorensen's last sale in August 2001.

As explained above, review of an arbitration award for manifest disregard of the law is "severely limited," and "to modify or vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet

---

[2] The parties do not dispute that New York law should be applied and the Court can accept the agreement of the parties. See Hannex Corporation v. GMI, Inc., 140 F.3d 194, 203 n.7 (2d Cir. 1998); Bhandari v. The Trustees of Columbia University, No. 00 Civ. 1753, 2000 WL 310344, at *5 n.1 (S.D.N.Y. March 27, 2000).

refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." Halligan, 148 F.3d at 202 (internal quotations omitted); see also Duferco, 333 F.3d at 388-89; DiRussa, 121 F.3d at 821; Wedbush, 320 F.Supp.2d at 126-27.

Capgemini's argument that the Panel incorrectly calculated the value of the stock by using a date other than the date of breach does not provide grounds for vacatur. Under New York law, "[a]rbitrators have power to fashion remedies appropriate to the resolution of the dispute between the parties before them." SCM Corp. v. Fisher Park Lane Co., 358 N.E.2d 1024, 1028 (N.Y. 1976); see also, Matter of Paver & Wildfoerster (Catholic High School Assn.), 345 N.E.2d 565, 569 (N.Y. 1976). It is undisputed that the parties did not provide the Panel with the price of the stock on the date of the breach. The Panel arrived at its calculation for the value of the stock using the best evidence submitted, which was the price of the stock at Sorensen's last sale of the stock in August 2001. There was no evidence of any changes in the price of the stock. Here, the Panel fashioned an appropriate remedy based upon the facts and law before it. Therefore, this Court cannot conclude that there was no colorable basis for the Award. See Hoeft v. MVL Group, Inc., 343 F.3d 57, 70 (2d Cir.

2003) (finding no manifest disregard of law where arbitrator calculated primary year earnings in accordance with his understanding of parties' intent in face of conflicting evidence from parties); Getko Group, Inc. v. Amica Mutual Ins. Co., No. 03 Civ. 5876, 2003 WL 22455303, at *3 (S.D.N.Y. Oct. 28, 2003) (finding no manifest disregard of law where record provided no evidence of expenses or losses, because support exists for proposition that "New York law permits imprecise and even somewhat speculative contract damages in arbitration proceedings").

Moreover, Capgemini did not argue for a measure of damages based on the value of the shares at the time of breach and present evidence as to that value. Hence Capgemini cannot point to any clear law that was brought to the arbitrators' attention that they disregarded. See GMS Group LLC v. Benderson, 326 F.3d 75, 78 (2d Cir. 2003). Capgemini cannot, having failed to take advantage of its opportunity at the arbitration to raise this issue and offer evidence supporting it, now claim that the Award was in manifest disregard of the law because the Panel did not consider evidence that the parties failed to provide.

2.

Capgemini also argues that the value of the stock as
calculated by the Panel should have been adjusted for the stock
restrictions, which would have prohibited Sorensen from selling
portions of the 10,201 shares until specific dates.  Again, there
can be no manifest disregard of the law because Capgemini never
argued to the arbitrators that the value of the shares should be
reduced by restrictions on the shares, and thus the arbitrators
never disregarded a clear rule of law.

Moreover, the case Capgemini cites to support its assertion
that the stock should have been discounted because of its
restrictions, <u>Lucente v. International Business Machines</u>
<u>Corporation</u>, establishes no clear rule of law supporting
Capgemini.  In <u>Lucente</u>, the district court had measured damages
for restricted stock eight months after the breach occurred,
reasoning that the plaintiff would not have been able to sell the
stock until a future date.  <u>Lucente v. Int'l Bus. Machs. Corp.</u>,
117 F.Supp.2d 336, 358-59 (S.D.N.Y. 2000), <u>rev'd</u>, 310 F.3d 243
(2d Cir. 2002).  Although the Court of Appeals ultimately
reversed this finding on different grounds, it explicitly called
into question the district court's reasoning without deciding the
issue of whether the valuation based on the sale price of the
stock eight months after the breach was correct.  <u>Lucente</u>, 310

F.3d at 261.  The Court of Appeals found that "New York Courts
have rejected awards based on what the actual economic conditions
and performance were in light of hindsight," and that "New York's
rule for measuring contract damages by the value of the item at
the time of the breach is eminently sensible and actually takes
expected lost future profits into account."  Id. at 262 (internal
quotation marks and citations omitted).  The Court of Appeals
noted that, although none of the cases it cited supporting that
proposition dealt with restricted stock, "we have found no New
York cases suggesting that a different rule would apply to
restricted stock."  Id.  More recently, the Court of Appeals for
the Second Circuit cited Lucente while rejecting a measurement of
damages for undelivered warrants that adjusted the value of the
warrants according to the Court's estimation of how long the
plaintiff would have held the warrants before exercising them.
See Oscar Gruss, 337 F.3d at 196-97.  The Court of Appeals stated
that the proper measurement for damages was the value of the
warrants on the date the defendant breached the contract.  See
id. at 196-97.

    Because the legal principle that Capgemini argues the Panel
should have applied is not defined, explicit, or clearly
applicable, Capgemini has failed to demonstrate a manifest

disregard of the law.  See Duferco, 333 F.3d at 388-89; GMS Group, 326 F.3d at 78; Goldman, 306 F.3d at 1216; Halligan, 148 F.3d at 202; DiRussa, 121 F.3d at 821; Wedbush, 320 F.Supp.2d at 126-27.  The Panel's award of monetary damages is not in manifest disregard of the law.

3.

Capgemini argues that the Panel also acted in manifest disregard of the law when it calculated the prejudgment interest from January 11, 2002 for stock that Sorensen would not have been able to sell until later dates.

Capgemini provides no evidence that it brought this legal argument to the attention of the Panel, or that the Panel was otherwise aware of it.  Having failed to raise the argument regarding the proper judgment of prejudgement interest, Capgemini may not now raise the issue in support of the proposition that, by ignoring the principle it failed to raise, the Panel acted in manifest disregard of the law.

Moreover, Capgemini has not demonstrated that the legal principle it argues the Panel ignored – that prejudgment interest for damages involving restricted stock should be calculated from the dates that the stock could be sold – is well defined,

explicit, and clearly applicable to the arbitration.  The only case Capgemini cites in its papers to support its claim is Lucente, which, as described above, supports the legal principle that damages should be calculated from the time of the breach. Lucente, 310 F.3d at 262.  Because Capgemini has failed to show that the Panel chose to ignore a well defined, explicit, and clearly applicable principle of law, Capgemini has failed to demonstrate that the Award of prejudgment interest was in manifest disregard of the law.

E.

Sorensen moves to modify the Award to value the stock price based on the price on the date of the breach, January 11, 2002. He submits new evidence with his application to show that the value of each share should be increased from $67.44 per share to $76.58 per share.  (See Respondent's Memorandum of Law in Opposition to Petitioner's Petition to Vacate, Modify, or Correct Arbitration and in Support of Respondent's Cross-Petition to Modify or, Alternatively, to Confirm Arbitration Award, dated Oct. 25, 2004 at 24; Petrella Decl., Ex. I.)

However, a party may not fail to submit evidence to an arbitration panel and then ask that the resulting award be

modified for failure to take into account the evidence that the party withheld.  <u>Pike v. Freeman</u>, 266 F.3d 78, 89 (2d Cir. 2001); <u>see</u> <u>Cook Indus., Inc. v. C. Itoh & Co. (America) Inc.</u>, 449 F.2d 106, 107-08 (2d Cir. 1971).  Because Sorensen did not present evidence of the stock price to the Panel, he cannot now claim that the Panel's failure to account for evidence it did not have and a legal argument that was not made is manifest error requiring modification.

F.

The respondent also requests post-award, prejudgment interest at an annual rate of 9% from the date of the award. (Letter from Sean F. O'Shea dated June 15, 2005.)  Because this is a diversity case, prejudgment interest is governed by New York law.  <u>See</u> <u>Northrop Corp. v. Triad Int'l Marketing S.A.</u>, 842 F.2d 1154, 1155 (9th Cir. 1988) (per curiam) (finding state law determines rate of post-award, pre-judgment interest in diversity action enforcing arbitration award under Federal Arbitration Act); <u>Commonwealth Assocs. v. Letsos</u>, 40 F.Supp.2d 170, 177 n.42 (S.D.N.Y. 1999); <u>Coastal Power Intern Ltd. v. Transcontinental Capital, Corp.</u>, 10 F.Supp.2d 345, 371 (S.D.N.Y. 1998).  Under New York law, interest shall be recovered on an arbitration award.

See CPLR § 5002; <u>Glantz v. Nationwide Mut. Ins. Co.</u>, 641 N.Y.S.2d 136 (App. Div. 1996); **<u>Kavares v. Motor Vehicle Acc. Indemnification Corp.</u>**, 285 N.Y.S.2d 983, 986 (App. Div. 1967), <u>aff'd</u>, <u>McEntee v. Motor Vehicle Accident Indemnification Corp.</u>, 271 N.E.2d 915 (N.Y. 1971).  The proposed rate of 9% per annum is in accordance with CPLR § 5004.  Therefore, the Court grants prejudgment interest at a rate of 9% per annum on the amounts due from the date of the award to the date judgment is entered in this matter.

## CONCLUSION

For the reasons stated above, Capgemini's motion to vacate, modify, or correct the arbitration award is **denied**, and the arbitration award is **confirmed**.  Sorensen's cross-petition to modify the arbitration award is **denied**.  Sorensen's request for post-award, prejudgment interest in the amount of 9% is **granted**. Therefore, the Clerk should enter a judgment in favor of the respondent in the amount of $687,955 plus $163,248 in interest for the period January 1, 2002, to August 21, 2004, and an additional 9% interest on $687,955 for the period August 22, 2004, to the date judgment is entered.  The Clerk is directed to enter Judgment in accordance with this Opinion and to close this case.

- 33 -

Therefore, the Court grants prejudgment interest at a rate of 9% per annum on the amounts due from the date of the award to the date judgment is entered in this matter.

## CONCLUSION

For the reasons stated above, Capgemini's motion to vacate, modify, or correct the arbitration award is **denied,** and the arbitration award is **confirmed.** Sorensen's cross-petition to modify the arbitration award is **denied.** Sorensen's request for post-award, prejudgment interest in the amount of 9% is **granted.** Therefore, the Clerk should enter a judgment in favor of the respondent in the amount of $687,955 plus $163,248 in interest for the period January 1, 2002, to August 21, 2004, and an additional 9% interest on $687,955 for the period August 22, 2004, to the date judgment is entered. The Clerk is directed to enter Judgment in accordance with this Opinion and to close this case.

**SO ORDERED.**

**Dated:** **New York, New York**
**June 30, 2005**

John G. Koeltl
United States District Judge